UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 6:11-CR-79-GFVT-HAI-5 |
| ) | |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| HIRAM AUDIE BROCK, ) | |
| ) | |
| Defendant. ) | |
| ) | |

*** *** *** ***

On referral from District Judge Van Tatenhove (D.E. 238), the Court considers reported violations of supervised release conditions by Defendant Hiram Audie Brock.

**I.**

District Judge Van Tatenhove entered Judgment against Defendant in April 2013 after Defendant pleaded guilty to one count of conspiracy to distribute oxycodone and methadone. D.E. 204. Defendant was sentenced to 114 months of imprisonment followed by three years of supervised release. *Id*. at 2-3. According to the BOP website, Defendant was released on March 24, 2020.

On September 30, 2020, the United States Probation Office ("USPO") issued a report stating that on September 24, Defendant had submitted a urine sample that was positive for oxycodone on instant testing. D.E. 237. Defendant admitted using oxycodone. The probation officer asked that Defendant's release not be revoked, but that he be given an opportunity to

enroll in substance abuse treatment. *Id.* Judge Van Tatenhove approved the request, and Defendant was referred to outpatient addiction treatment.

## II.

On December 7, 2020, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges two violations. According to the Report,

> On November 25, 2020, Brock reported to the U.S. Probation Office in London as previously directed. He provided an observed urine sample which tested positive for the use of benzodiazepine and fentanyl on an instant testing device. When questioned about the results, Brock stated he had taken a "30." When asked to clarify what a "30" was, Brock stated he was not sure. The sample was packaged in his presence and sent to the national laboratory for confirmation.
>
> On November 29, 2020, the undersigned received a Drug Test Report, stating Brock's urine sample tested negative for the use of benzodiazepine. On December 7, 2020, the undersigned received a second Drug Test Report, stating Brock's urine sample tested positive for the use of fentanyl.

Based on this positive urine screen, Violation #1 alleges a violation of the condition that prohibits Defendant from using any controlled substance except as prescribed by a physician. This is a Grade C violation.

Based on Defendant's use of fentanyl, Violation #2 charges a violation of the condition prohibiting commission of another federal, state, or local crime. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's methamphetamine use and possession, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

The Court conducted an initial appearance pursuant to Rule 32.1 on December 17, 2020, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 240. At the initial appearance, the United States made an oral motion

2

for interim detention; Defendant did not argue for release. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id.* Defendant's final hearing had to be continued because the jail stopped transporting prisoners due to a COVID outbreak. D.E. 246

At the final hearing on January 29, 2021, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 249. Defendant competently entered a knowing, voluntary, and intelligent stipulation to both violations. *Id.* He admitted taking a pill that he thought was 30mg oxycodone prior to the November 25 urine test. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for each violation as described in the Report. The United States thus established both violations under the standard of section 3583(e).

### III.

The Court has evaluated the entire record, the Report and accompanying documents, and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to distributing oxycodone and methadone, a Class C felony. *See* 21 U.S.C. § 846. Such a conviction carries a two-year maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would

3

qualify as a Grade C violation with respect to Violation #1 and a Grade B violation for Violation #2. Given Defendant's criminal history category of VI (the category at the time of the conviction in this District) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter Seven, is 21 to 27 months. USSG § 7B1.4(a). Due to the statutory two-year maximum, Defendant's effective Guidelines Range is 21 to 24 months.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's conviction carries no maximum term of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

**IV.**

At the final hearing, the parties presented an agreed recommended sentence of eighteen months of imprisonment, followed by two additional years of supervised release. The parties both stressed that Defendant needs to take advantage of any substance abuse and mental health treatment offered to him.

The government explained that the "30" Defendant ingested was apparently a counterfeit oxycodone pill that contained fentanyl. It was alarming that Defendant had returned to drug use (as also noted in the September 30, 2020 report). Defendant's addiction, the government argued, endangers himself and the public, especially when he does not even know what he is consuming. In support of the jointly recommended downward departure, the government explained that Defendant's relatively high Guidelines Range is driven by his criminal history, which is Category VI. According to the government, six of Defendant's criminal history points (for

---

[1] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

4

convictions that affected his career offender status) relate to conduct dating back to 1997. Because these "old convictions" had such an impact on his criminal history score, the government suggested that Defendant's criminal history category of VI overstates his criminality. Nevertheless, Defendant's history does show extensive involvement in drug use and distribution. The government argued that eighteen months' incarceration would provide adequate protection to the public and both general and specific deterrence.

The defense largely agreed with the government's position. The defense noted that, after his release, Defendant had fallen back into using 30g oxycodone pills. The USPO tried to get him into treatment, but that did not occur fast enough.

Defendant addressed the Court. He said he just needs help with his addiction, and he has never really gotten any. He explained he had been hooked on pain medication since an accident in 2002.

**V.**

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the section 3583(e) analysis, as well as the Guidelines Range.

Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted treatment in lieu of revocation under 18 U.S.C. § 3583(d). *Crace*, 207 F.3d at 835. Neither party argued that this exception applies.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

The undersigned recommends accepting the jointly recommended sentence of eighteen months of incarceration followed by two years of supervised release. This is a serious penalty, but it is below the Guidelines Range.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). According to the PSR, Defendant "conspired with various sources of supply that had access to oxycodone prescribed in Florida." Defendant then sold these pills, "usually in 100 tablet quantities." PSR ¶ 11. Defendant thereby fed his own addiction and helped other people feed theirs.

The Court next considers Defendant's history and characteristics. Of course, Defendant's relatively high Guidelines Range is driven by his criminal history category of VI. Prior to this conviction, he was convicted of trafficking cocaine, marijuana, and oxycodone. Defendant has a drug problem and drug use causes him to commit crimes.

Another aspect of Defendant's history is his lenient underlying sentence. Defendant's Guidelines Range was 151 to 188 months, but he was sentenced to 114 months. This prior leniency is an aggravating factor. "Where the original sentence was the result of a downward departure . . . an upward departure may be warranted." USSG § 7B1.4, application note 4.

The Court also considers the need to deter criminal conduct and protect the public. These factors weigh heavily. What is especially disturbing in this case is that Defendant apparently did

not even know what he was taking. His "30" turned out to contain fentanyl, which is an incredibly dangerous drug. Defendant must kick his habit to save his life. Until then, a significant sentence will keep him out of trouble, protect the public, and help Defendant think twice about returning to drug use.

Another factor focuses on opportunities for education and treatment. The parties agreed that Defendant has not received intensive treatment yet. The USPO is encouraged to evaluate Defendant for treatment upon his release.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Here, this is Defendant's first violation, and his revocation conduct is driven by his addiction. Defendant has done well to accept responsibility for his actions.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Here, the Court recommends an incarceration sentence of eighteen months, as advocated by the parties. This is below the Guidelines Range of 21 to 24 months. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court

7

must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

Here, a below-Guidelines sentence is appropriate because the range is driven by his criminal history, which in turn relies heavily on convictions from 1997. Additionally, Defendant's violation conduct is driven by his addiction. Eighteen months is a significant sentence, particularly upon a first revocation. The Court hopes that this wake-up call, and whatever post-release treatment is appropriate, will help Defendant be more compliant in the future.

For the reasons discussed herein, the Court finds the recommended sentence is sufficient, but not greater than necessary, to address the pertinent penalty factors.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon his stipulation, Defendant be found guilty of both violations.
2. Revocation with a term of imprisonment of eighteen months.
3. A term of supervised release of 24 months, under the conditions previously imposed at Docket Entry 204. The Court recommends drug abuse treatment, but existing Special Condition #2 is adequate to accomplish this goal.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the

District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission.  If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 1st day of February, 2021.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge