UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | No. 6:11-CR-79-GFVT-HAI-5 |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| HIRAM AUDIE BROCK, ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

On referral from District Judge Van Tatenhove (D.E. 271), the Court considers reported violations of supervised release conditions by Defendant Hiram Audie Brock. This is his second revocation.

**I.**

District Judge Van Tatenhove entered Judgment against Defendant in April 2013 after Defendant pleaded guilty to one count of conspiracy to distribute oxycodone and methadone. D.E. 204. Defendant was sentenced to 114 months of imprisonment followed by three years of supervised release. *Id*. at 2-3. Defendant was released on March 24, 2020.

On September 30, 2020, the United States Probation Office ("USPO") reported that on September 24, Defendant had submitted a urine sample that was positive for oxycodone on instant testing. D.E. 237. Defendant admitted using oxycodone. The probation officer asked that Defendant's release not be revoked, but that he be given an opportunity to enroll in

substance abuse treatment. *Id.* Judge Van Tatenhove approved the request, and Defendant was referred to outpatient addiction treatment.

On December 7, 2022, the USPO initiated revocation proceedings after Defendant submitted, on November 25, a urine sample that lab-tested positive for fentanyl. Defendant told his officer upon instant testing that he had taken a "30," but was not certain what the "30" was. Defendant ultimately pleaded guilty to controlled-substance use and committing the crime of fentanyl possession. D.E. 250. He was given a below-Guidelines sentence of eighteen months, with two years of supervision to follow. D.E. 254. Defendant was released again on March 28, 2022.

## II.

On May 11, 2022, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges two violations. According to the Report,

> On April 27, 2022, the defendant submitted a urine specimen which appeared positive for fentanyl, via instant testing device. The specimen was sent to Abbott for testing. Prior to the submitting the sample, the defendant indicated using Xanax and Neurontin approximately four days earlier. On May 9, 2022, a Drug Test Report was received from Abbott, confirming a positive test result for fentanyl.

Based on this positive urine screen, Violation #1 alleges a violation of the condition that prohibits "unlawful use of a controlled substance." This is a Grade C violation.

Based on Defendant's use of fentanyl, Violation #2 charges a violation of the condition prohibiting commission of another federal, state, or local crime and the condition prohibiting unlawful possession of a controlled substance. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's fentanyl use

and possession, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

The Court conducted an initial appearance pursuant to Rule 32.1 on May 26, 2022, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 275. At the initial appearance, the United States made an oral motion for interim detention; Defendant did not argue for release. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id.*

At the final hearing on June 2, 2022, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 276. Defendant competently entered a knowing, voluntary, and intelligent stipulation to both violations. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for each violation as described in the Report. The United States thus established both violations under the standard of section 3583(e). The parties presented a jointly recommended penalty.

**III.**

The Court has evaluated the entire record, the Report and accompanying documents, and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to distributing oxycodone and methadone, a Class C felony. *See* 21 U.S.C. § 846. Such a conviction carries a two-year maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violation #1 and a Grade B violation for Violation #2. Given Defendant's criminal history category of VI (the category at the time of the conviction in this District) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter Seven, is 21 to 27 months. USSG § 7B1.4(a). Due to the statutory two-year maximum, Defendant's effective Guidelines Range is 21 to 24 months.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's drug-trafficking conviction carries no maximum term of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

**IV.**

At the final hearing, the parties presented an agreed recommended sentence of 24 months of imprisonment (the statutory maximum), with no supervised release to follow.

The government explained that Defendant received an eighteen-month revocation sentence last time, he was out for one month, and then he used fentanyl again. A longer sentence is warranted this time because a second violation, committed soon after release, is an aggravated breach of the Court's trust and demonstrates the need to protect the community.

---

[1] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

4

As for recommending no further supervision, the government faced a "quandary." Defendant has committed three nearly identical felony violations on supervision. He shows no signs of improving and there is nothing more Probation can offer that seems likely to change his behavior. Defendant suggested he be taken off-paper. And he was "honest" about his likelihood of future noncompliance. This scenario suggests that Probation's resources could be better expended elsewhere.

According to the government, the more difficult question is whether Defendant poses sufficient danger to the community that supervision is needed despite Defendant's poor prospects for rehabilitation.

With "some hesitation," the government concluded that Defendant is not so dangerous that more supervision is *required*. On one hand, Defendant is a Career Offender with a Criminal History Category of VI. However, he would not qualify as a Career Offender under current law because one of his predicate felonies is wanton endangerment, which is no longer a crime of violence. Aside from the oxycodone-trafficking conviction in this case, Defendant has another federal conviction for trafficking cocaine. PSR ¶ 28.

Looking to the conviction in this case, the government opined that Defendant was neither a "kingpin" nor a minor player. He had no aggravating-role sentencing enhancement, and there was no violence or firearm involved. He acted as a "conduit" for oxycodone sources in Florida. Ultimately, the government concluded, Defendant's role in the oxycodone trafficking was not so aggravated that his potential risk to the public requires additional supervision. There is no hint of trafficking conduct or potential violence in his violations. What is concerning is that he is using fentanyl now, which is a powerful and risky chemical. The government opined that

5

Defendant, if he keeps using fentanyl, will likely kill himself by overdose. He poses an acute risk to himself, but not a particular danger to the community.

The defense agreed with the government's presentation. But it wanted to stress that Defendant was not being defeatist or expressing helplessness. He is simply aware that he cannot resist the temptation to use drugs.

Defendant declined to address the Court concerning the recommended penalty.

**V.**

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the section 3583(e) analysis, as well as the Guidelines Range.

Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted treatment in lieu of revocation under 18 U.S.C. § 3583(d). *Crace*, 207 F.3d at 835. Neither party argued that this exception applies.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

The undersigned recommends accepting the jointly recommended sentence of 24 months of incarceration, with no additional supervision to follow.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). According to the PSR, Defendant "conspired with various sources of supply that had access to oxycodone prescribed in Florida." Defendant then sold these pills, "usually in 100 tablet quantities." PSR ¶ 11. Defendant thereby fed his own addiction and helped other people feed theirs. His behavior was very harmful to this community. But, as the government pointed out, Defendant did not receive any sort of leadership enhancement at sentencing.

The Court next considers Defendant's history and characteristics. Of course, Defendant's relatively high Guidelines Range is driven by his criminal history category of VI. Prior to this conviction, he was convicted of trafficking cocaine, marijuana, and oxycodone. Defendant has a drug problem and drug use causes him to commit crimes. As the parties stressed, although Defendant has violated his terms of release three times by using drugs, no facts suggest he has been involved in trafficking activity since his conviction.

Another aspect of Defendant's history is his lenient underlying sentence. Defendant's Guidelines Range was 151 to 188 months, but he was sentenced to 114 months. This prior leniency is an aggravating factor. "Where the original sentence was the result of a downward departure . . . an upward departure may be warranted." USSG § 7B1.4, application note 4. Defendant was also given a below-Guidelines sentence on the prior revocation.

The Court also considers the need to deter criminal conduct and protect the public. Last time, the Court stressed the need to protect Defendant from himself. The "30" he had taken turned out to be fentanyl. And now again, he has taken fentanyl, perhaps unaware of what he

was ingesting. A lengthy incarceration sentence will hopefully keep him clean and alive a while longer.

Another factor focuses on opportunities for education and treatment. A 24-month sentence may provide some opportunities for education and treatment in prison. Otherwise, Defendant does not appear sufficiently motivated to change for treatment to be effective.

The Guidelines suggest that the *primary* wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Here, the trust breach is aggravated because this is Defendant's third drug positive on supervision. The first resulted in no revocation, the second resulted in a below-Guidelines sentence. He violated a third time after only a month on release. A revocation sentence at the statutory maximum is appropriate in this circumstance.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence.

For the reasons discussed herein, the Court finds the recommended sentence is sufficient, but not greater than necessary, to address the pertinent penalty factors. A revocation sentence of 24 months will provide two years of deterrence and protection to the public. As the parties agree, further supervision is not likely to elicit compliance.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon his stipulation, Defendant be found guilty of both violations.

2. Revocation with a term of imprisonment of 24 months, with no additional supervised release to follow.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 3rd day of June, 2022.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge